## MARKS v. JONES.

(Court of Civil Appeals of Texas. Dallas.
Feb. 22, 1913.)

1. TRIAL (§ 251*)—ACTION BY MATERIALMAN
—INSTRUCTION—CONFORMITY TO PLEADINGS.

Where, in a materialman's action for lumber used by a contractor in rebuilding defendant's house, the petition sought to recover upon the theory of estoppel, in that defendant and the contractor agreed, without plaintiff's knowledge, to change the plan of the house, so as to secure more lumber than plaintiff had undertaken to furnish the contractor, an instruction to find for the plaintiff if the house was not constructed in substantial compliance with the original plans was erroneous for failure to present the case presented by the petition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

2. ESTOPPEL (§ 63*)—BY CONDUCT—ESSENTIAL ELEMENTS.

An owner is not estopped by conduct from denying liability for lumber bought by a contractor and used in rebuilding the owner's residence, merely because he and the contractor, without notifying the materialman, agree upon a plan of the house differing from the plan under which the materialman agreed with the contractor to furnish the lumber; it being essential, to constitute estoppel by conduct, that there be false representations or concealment of material facts, with knowledge thereof by the wrongdoer, with intent that they shall be acted upon, and that they shall have in fact been acted upon.

[Ed. Note.—For other cases, see Estoppel, Dec. Dig. § 63.*]

3. ESTOPPEL (§ 115*)—EVIDENCE—VARIANCE.

Where the petition, in a materialman's action against an owner for the price of lumber furnished a contractor, stated a cause of action based solely on estoppel by conduct, it was error to admit proof of defendant's direct promise to pay the debt.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 305; Dec. Dig. § 115.*]

4. FRAUDS, STATUTE OF (§ 84*)—AGREEMENT TO PAY ANOTHER'S DEBT.

An owner's parol agreement to pay for lumber previously contracted for by a contractor, to be used in rebuilding the owner's house, was void under the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 154–161; Dec. Dig. § 84.*]

5. TRIAL (§ 252*)—ACTION BY MATERIALMAN
—INSTRUCTION—EVIDENCE.

Where a materialman's action against a house owner for the price of lumber furnished the contractor was based upon estoppel by conduct, in that the plan of the house was changed by the contractor and owner, without the plaintiff's knowledge, so as to enable the contractor to secure more lumber than the original plan called for, and there was no proof as to what amount of lumber would have been furnished under the original plan, and what amount actually was furnished, the court properly refused to instruct that plaintiff would in no event be entitled to recover more than the amount which the value of the lumber furnished exceeded the value of that which he would have furnished had there been no change in the plan.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

6. ESTOPPEL (§ 102*)—BY CONDUCT—EXTENT OF LIABILITY.

Where a materialman agrees with a contractor to furnish lumber for a house to be re-built in accordance with certain plans, and the owner and contractor fraudulently change the plans of the house, unknown to the materialman, so as to cause him to sell more lumber than the original plans called for, the owner can be held liable because of estoppel by conduct only for the value of the lumber furnished in excess of what he would have furnished had there been no change in the plans.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 294; Dec. Dig. § 102.*]

7. TRIAL (§ 251*)—ACTION BY MATERIALMAN
—INSTRUCTION—ISSUES.

Where, in a materialman's action against an owner for lumber sold a contractor, the sole issue raised by the pleadings and evidence was whether defendant was liable by reason of conduct which estopped him from denying liability, the court properly refused to instruct upon an existing relation between plaintiff and defendant, which was created by plaintiff's signing as surety for the contractor.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

Appeal from Limestone County Court; W. A. Keeling, Judge.

Action by Young Jones against B. H. Marks. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

A. M. Blackmon and Doyle & Jackson, all of Groesbeck, for appellant. Bradley & Herring and C. S. Bradley, all of Groesbeck, for appellee.

RASBURY, J. Appellee sued appellant in the trial court for lumber used in rebuilding appellant's residence, and upon trial before a jury recovered verdict followed by judgment.

The controversy grew out of a contract entered into between appellant and one Rudasill, the terms of which are not disputed, and by which Rudasill, who was a contractor, undertook and agreed, in substance, to furnish all necessary material and rebuild appellant's residence, in the town of Groesbeck, for the sum of $1,200. Appellee guaranteed in all things the performance of the contract. Appellee was a lumber merchant, and undertook to guarantee the contract, because he expected to sell Rudasill the lumber to be used in rebuilding the residence. Rudasill set about the performance of the contract, securing from appellee all lumber used in that behalf, but before the work was completed appellee refused to furnish the additional lumber necessary to complete same, whereupon Rudasill abandoned the work. At the time of such abandonment appellant had paid Rudasill on his contract $1,087.50, of which amount $300 went to appellee upon an assignment by Rudasill to appellee. After crediting Rudasill's account with the $300, there was due appellee for lumber used in appellant's residence by Rudasill a balance of $489.70. Up to this point the facts are undisputed. Matters standing as we have related them, appellee sued appellant for the balance of $489.70.

Appellee's petition consisted of two counts;

---

the first being a formal declaration of liability upon an account for merchandise sold and delivered to appellant at his special instance and request. The second count in the petition, after reciting the contract between appellant and Rudasill, avers, in effect, that after Rudasill had procured part of the lumber · to rebuild appellant's residence that Rudasill and the appellant, without the knowledge or consent of appellee, agreed and confederated to and did abandon and abrogate their original contract upon which appellee was surety, and agreed to construct a different and much more expensive house than was contemplated by their original contract, which greatly increased the cost of labor and material. It was also charged that after the agreement to abandon and change the original contract appellant himself, and by his agent, Rudasill, purchased of appellee the lumber sued for in this proceeding and being the unpaid balance on all lumber furnished by appellee to Rudasill, and which was used by Rudasill in appellant's house. It was further alleged by appellee that he was unaware at the time he furnished said lumber that it was not being used for rebuilding appellant's residence, as contemplated by the contract upon which he was surety, and that he would not have furnished same had he known same was being diverted as claimed, and refused to furnish any additional lumber after learning the alleged facts, and that he was unable to state how much of the lumber was furnished Rudasill prior to the agreement between Rudasill and appellant to abandon their original contract.

After a general and certain special exceptions, and after the general denial, appellant, by · special answer, alleged, in substance, that he never purchased the lumber from appellee, nor authorized any one else to do so for him; that he employed Rudasill, who was to furnish all labor and material, to make the improvements upon his residence for the sum of $1,200, and paid him the full price agreed upon, and that if appellee furnished the lumber used in that behalf he furnished it to Rudasill, knowing that Rudasill, under the contract, was to furnish same, and hence sold same to Rudasill and not appellant, and that appellant was in no event to be responsible for same; that appellant from time to time paid Rudasill the full contract price, except $300, which was paid to appellee upon order from Rudasill until the work was abandoned by Rudasill, and after which appellant completed same at a cost of $500. Appellant specially denied any conspiracy with Rudasill to defraud appellee, and denied receiving any benefits from the lumber other than he paid for, and that if appellee lost anything it was through extending credit to Rudasill. · ·

Based upon the findings of the jury, Rudasill did abandon the work as alleged, and Rudasill and appellant did make substantial changes in the plans for rebuilding appellant's residence. Under the instructions given by the trial judge, we think, aside from the undisputed facts related at another place, the verdict of the jury comprehends no more than we have just stated.

[1, 2] We will not attempt to discuss appellant's assignments of error in their order, but consider them in the order of their importance. This leads to a consideration of appellant's tenth assignment of error, which complains of paragraph 4 of the court's charge, which undertakes to present appellant's alleged liability by estoppel by conduct, or, in other words, his liability by reason of his failure to notify appellee that appellant and Rudasill had substantially modified or changed the plans originally agreed upon. By this charge the jury was told that if Rudasill and appellant agreed to and did substantially change the plans for rebuilding the house, without the knowledge of appellee, and that such change required other lumber than that contemplated by the original contract between Rudasill · and appellant, then to return a verdict for appellee for the full amount of his claim. In our opinion, this charge is distinctly erroneous, and must have misled the jury. It not only did not present the case alleged by appellee in his petition, but, in addition, made the liability of appellant turn upon a group of facts which, in law, were insufficient to create liability. By the averments of the petition liability was sought to be fastened upon appellant for the bill of lumber upon the theory that appellant and Rudasill confederated and agreed, without the knowledge or consent of appellee, to abrogate and abandon their original plans and build a much more expensive house than provided for therein, and by such means secure from appellee more lumber than would have been required by the original contract, although the petition falls short of charging the purpose of the change; while the charge of the court tells the jury without equivocation, if the house was not constructed in substantial compliance with the plans, to return a verdict for the appellee. It is clear from the contract and conceded by appellee's pleading, and not disputed by any witness, that Rudasill was to furnish all material necessary for the contemplated work, and that, had he and appellant observed the original plans, there would have been no liability claimed against him for the lumber, and, as we have just said, liability is sought to be fastened upon appellant only by force of the law of estoppel by conduct; and to say that a substantial change only from the plans would invoke the rule is, in our opinion, wholly untenable. Without, however, attempting to define any set of facts which will, in law, if proven, constitute estoppel by conduct, the charge

fails in all respects to correctly state the rule of law. Estoppel by conduct must actually or presumably contain the following elements: False representations or concealment of material facts, with knowledge thereof on the part of him who misrepresents or conceals same; the misrepresentations or concealments must have been made with the intention that the other party should act upon same, and that the other party was in fact induced to act upon same. Bigelow, Estoppel, 484. Of course, there are qualifications of the general rule announced, but a discussion of the same is unnecessary. None of these essential and controlling elements were contained in the court's charge; and until these general rules, with such qualifications as the testimony may warrant, are alleged and properly presented to the jury in the charge of the court, it would be inequitable to permit the verdict in this case to stand. While it is conceivable that proof of a substantial change in the plans, supplemented with proof of matters showing an intention upon the part of appellant to mislead appellee into furnishing him lumber for his personal use under the guise of furnishing it to Rudasill, and that appellee was induced to act upon such misrepresentations, might be admissible under the rules announced by Mr. Bigelow, yet the bare circumstance of a substantial change in the plans, standing alone, and disassociated from all other facts and circumstances, will not, in law, constitute estoppel by conduct. While we think the charge was affirmative error, the matter was called to the attention of the trial judge by special charges 3 and 10, requested by appellant; and, while we do not approve the form of the special charges, they serve to emphasize the omission of the court below.

In connection with what we have just said relative to the court's charge, we do not intend thereby to say that a substantial departure from the original plans would be insufficient to release appellee from all liability as surety on Rudasill's building contract in a proceeding had for that purpose, since it has been long settled that substantial changes in the plans of a building, when proven, will release the surety.

[3, 4] Appellant's seventh assignment of error complains of the action of the court in permitting appellee to testify that after the contract between appellant and Rudasill was signed appellee said to appellant: "I have guaranteed your contract. Who will guarantee mine?" And that appellant replied, "I will stand between you and all danger." We think the assignment well taken. It cannot be consistently maintained, under the pleading and testimony in the record, that the debt was originally the debt of appellant, and that he can be held liable on any theory other than that of estoppel by conduct. Hence proof of a direct promise to pay the debt would come within the statute of frauds, and clearly it would not be admissible under the second count in the petition, since the declaration or promise to pay the debt preceded those facts which, it is claimed, constitute estoppel against appellant.

[5, 6] Appellant's thirteenth assignment of error complains of the refusal of the court to give his special charge No. 7, which, in effect, told the jury that appellee would in no event be entitled to recover from appellant more than the value of the lumber which he furnished in excess of that which he would have furnished Rudasill had there been no breach of the contract. Appellee asserts in response to this proposition that there was no proof as to what amount would have been furnished under the contract and what actually was furnished, and the record sustains him in that claim; and hence the assignment is overruled. We consider it proper to say, however, that upon another trial this theory should be presented to the jury, to be considered by them in the event they find appellant liable for the debt because of estoppel by conduct. For it occurs to us that in invoking the rule of estoppel, which is largely a rule of justice and morals, that the rule itself will confine a recovery by appellee to such an amount only as the conduct of appellant caused him to sell to Rudasill. It is clear that he intended to furnish Rudasill all the lumber necessary to rebuild the house under the plan agreed upon; and it cannot be said that any act, concealment, or misrepresentation on the part of appellant subsequent to signing the contract induced him to furnish what, he concedes, he had initially agreed to furnish. And it occurs to us that the burden is upon appellee to show the amount of such excess.

[7] Appellant's fourth assignment of error complains of the court's refusal to give special charge No. 2, which is intended to present to the jury the relation existing between appellant and appellee, created by appellee's signing Rudasill's contract as surety. In respect to this matter we are of opinion that upon another trial the jury should be told that, in this proceeding at least, appellant owed appellee no duty whatever because of appellee's suretyship. There is no attempt to hold appellee as surety; nor is appellee claiming any rights accruing by virtue of his suretyship. Under the pleading at present in the record and the testimony, the question is whether appellant is liable for certain lumber sold Rudasill, but for which appellant is to be held responsible by reason of conduct on his part which estops him from denying same, to be submitted under the rules cited by us in another place.

There are a number of other assignments, some of which present error, notably the method by which appellee proved his account, but which, standing alone, would not be suf-

ficient to reverse the case; and there are also other assignments which we have not considered, for the reason that they in no respect comply with the rules for preparing causes for submission, but none of which, in view of another trial, will probably occur again.

Considering that the case has been neither properly pleaded nor presented to the jury, the judgment is reversed, and cause remanded for another trial.

Reversed and remanded.